UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

OCT 0 8 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 03 CR 681 |
| | ) | |
| AMERICAN MEAT AND SEAFOOD | ) | Magistrate Sidney I. Schenkier |

*DOCKETED*
*OCT 0 9 2003*

### PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, AMERICAN MEAT AND SEAFOOD, through its President and owner, KRISTOPHER KLIMEK, and its attorney, WILLIAM SPENCE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney for the Northern District of Illinois and AMERICAN MEAT AND SEAFOOD, acting through its authorized representatives (hereinafter referred to as "defendant"), regarding defendant's criminal liability in case 03 CR 681.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

This Plea Agreement has been submitted to the Board of



Directors of defendant, AMERICAN MEAT AND SEAFOOD, which has manifested its intention and agreement by corporate resolution, properly executed, to plead the corporation guilty in accord with this agreement and directed its President and owner, KRISTOPHER KLIMEK, and its attorney, WILLIAM SPENCE, to enter the plea agreement for defendant, in accord with Fed. R. Crim. P. 43(b)(1). A copy of this corporate resolution shall be made part of the record of this case at the time of the entry of the plea of guilty.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, AMERICAN MEAT AND SEAFOOD, through its President and owner, KRISTOPHER KLIMEK, and its attorney, WILLIAM SPENCE, have agreed upon the following:

1.    Defendant acknowledges that it has been charged in the information in this case with knowingly offering for sale adulterated pork loins, a misdemeanor in violation of Title 21, Sections 601(m)(3), 610(c), and 676(a).

2.    Defendant and its undersigned representative have read the charge against it contained in the information, and that charge has been fully explained to it by its attorney.

3.    Defendant and its undersigned representative fully understand the nature and elements of the crime with which defendant has been charged.

4.    Defendant will enter a voluntary plea of guilty to the information in this case.

5.    Defendant will plead guilty because it is in fact guilty

of the charge contained in the information. In pleading guilty, defendant admits the following facts, and that those facts establish its guilt beyond a reasonable doubt, and also constitute relevant conduct pursuant to Guideline §1B1.3:

On or about July 14, 1998, at Chicago, in the Northern District of Illinois, Eastern Division, defendant AMERICAN MEAT AND SEAFOOD knowingly offered for sale to the United States Bureau of Prisons, in interstate commerce, meat product, specifically, approximately 8,481 pounds of pork loins which were capable of use as human food, and which were adulterated because the pork loins were putrid and decomposed at the time of such sale, in violation of Title 21, United States Code, Sections 601(m)(3), 610(c), and 676(a).

More specifically, AMERICAN MEAT AND SEAFOOD at all relevant times was a wholesale food brokerage enterprise located in Naples, Maine, and engaged in the business of the wholesale buying and subsequent selling of meat, poultry, and other food products to various customers, including to federal prison facilities located in Arkansas, Texas, and North Carolina.

On or about June 12, 1998, AMERICAN MEAT AND SEAFOOD purchased approximately 14,335 pounds of pork loins ("subject pork loins") from Apato Provisions ("Apato"). Apato at all relevant times was a meat wholesaler located in Chicago, Illinois. The pork loins purchased by AMERICAN MEAT AND SEAFOOD were stored at Ashland Cold Storage in Chicago.

On or about June 16, 1998, AMERICAN MEAT AND SEAFOOD sold

3

approximately 1,750 pounds of the subject pork loins to food wholesaler Tippecanoe Foods, Inc. ("Tippecanoe"), which is located in West Lafayette, Indiana. Soon after receiving the subject pork loins, Tippecanoe employees noticed that the pork loins were green in appearance, smelled rancid, and had a milky liquid surrounding them. On or about June 23, 1998, the subject pork loins were returned to AMERICAN MEAT AND SEAFOOD as adulterated.

On or about June 22, 1998, AMERICAN MEAT AND SEAFOOD sent a shipment of approximately 319 pounds of the subject pork loins to KC Provisions, which is located in Rogers, Arkansas. The shipment was received on or about June 24, 1998. After the president of KC Provisions noticed that the subject pork loins had a dark green appearance, the president, pursuant to AMERICAN MEAT AND SEAFOOD's directions, had the pork loins destroyed as adulterated.

On or about July 24, 1998, AMERICAN MEAT AND SEAFOOD sold approximately 2,485 pounds of the subject pork loins to the Federal Medical Center, which is located in Forth Worth, Texas. Approximately 1,995 pounds of the subject pork loins were destroyed after staff at the Medical Center determined that pork loins were adulterated.

On or about July 24, 1998, AMERICAN MEAT AND SEAFOOD sold approximately 3,535 pounds of the subject pork loins to the Federal Correctional Institution, which is located in Big Springs, Texas. All 3,535 pounds of the subject pork loins had to be destroyed because they were adulterated.

On or about July 24, 1998, AMERICAN MEAT AND SEAFOOD sold

4

approximately 2,555 pounds of subject pork loins to the Federal Correctional Institution, which is located in Butner, North Carolina. All 2,555 pounds of pork loins had to be destroyed after Correctional Institution staff determined that they were adulterated.

6.    For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28 United States Code, Section 994, the parties agree on the following points:

(a) Pursuant to Guideline Section 2N2.1, the base offense level for Count One is 6;

(b) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for its criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for its actions, within the meaning of Guideline 3E1.1, a two-level reduction in the offense level is appropriate;

(b) Pursuant to Guidelines Section 8C2.1, Fine Guidelines Sections 8C2.2 through 8C2.9 do not apply to offense levels determined under Section 2N2.1;

(c)   Pursuant to Guidelines Section 8C2.10, the Court should determine an appropriate fine by applying the provisions of 18 U.S.C. §§ 3553 and 3572;

(d)   The parties agree that because of the nature and circumstances of these offenses the pecuniary gain or loss would be

5

difficult to ascertain or estimate and any attempt at such a calculation would unduly complicate and prolong the sentencing process. The parties agree, however, that a fine of $8,000 reasonably reflects the seriousness of the offenses and the need to provide just punishment and adequate deterrence, and is consistent with the factors enumerated in 18 U.S.C. §§ 3553 and 3572 as relevant to the imposition of a fine.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or Court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw its plea on the basis of such corrections.

8. Defendant understands the information to which it will plead guilty carries a maximum sentence of five years probation, a maximum fine of $200,000, or twice the loss to the victims, whichever is greater.

9. Defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, defendant will be assessed $125 for the misdemeanor charge to which it has pled guilty, in addition to any other penalty imposed. Defendant agrees to pay the special assessment of $125 at the time of sentencing with cash or a money order made payable to the Clerk of the U. S. District Court.

6

10.  Defendant and its undersigned representatives understand that by pleading guilty defendant surrenders certain rights, including the following:

(a)  If defendant persisted in a plea of not guilty to the charge against it, it would have the right to a public and speedy trial.  The trial could be either a jury trial or a trial by the judge sitting without a jury.  The defendant has a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b)  If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.  Defendant and its attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict it unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

(c)  If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence,  whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

7

(d)  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.  Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.  In turn, defendant could present witnesses and other evidence in its own behalf.  If the witnesses for defendant would not appear voluntarily, it could require their attendance through the subpoena power of the Court.

11.  Defendant and its undersigned representative understand that by pleading guilty defendant is waiving all the rights set forth in the prior paragraph.  Defendant's attorney has explained those rights to it and its undersigned representative, and the consequences of its waiver of those rights.  Defendant further understands it is waiving all appellate issues that might have been available if it had exercised its right to trial.

12.  Defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.  Acknowledging this, defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement.  Defendant also waives its right to challenge its sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255.  The

waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

13. Defendant understands that the information and this Plea Agreement are matters of public record and may be disclosed to any party.

14. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against it, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

15. At the time of sentencing, the parties shall recommend that the Court impose a fine of $8,000, and a probation period of four years. Defendant agrees that it will pay the fine to the clerk of the District Court at the time of sentencing.

16. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and, subject to the limitations of the sentencing guidelines, may impose the maximum penalties as set forth in paragraph 8 above. Defendant further acknowledges that if the Court does not accept the agreed fine or other sentencing recommendation of the parties, defendant will have no right to withdraw its guilty plea.

17. Defendant understands that its compliance with each part of this Plea Agreement extends throughout and beyond the period of

9

its sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. It further understands that in the event it violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or to resentence defendant. Defendant understands and agrees that in the event that this Plea Agreement is breached by defendant, and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the filing of the information in this case may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the filing of the information and the commencement of such prosecutions. Defendant acknowledges that this waiver is intended to permit the government to institute all prosecutions permitted by defendant's previous written waivers of the statute of limitations executed in this matter.

18. Defendant and its attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

19. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

20. Defendant acknowledges that it has carefully reviewed

10

each provision of this Plea Agreement with its attorney. Defendant further acknowledges that it understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 10/8/03

PATRICK J. FITZGERALD
United States Attorney

T. MARKUS FUNK
Assistant United States Attorney

AMERICAN MEAT AND SEAFOOD

By: KRISTOPHER KLIMEK,
President

WILLIAM SPENCE
Attorney for Defendant

11